OPINION OF THE COURT
Richard L. Price, J.
This CPLR article 78 proceeding by petitioner Fraydun Enterprises seeks to set aside a determination of the respondent Board of Standards and Appeals of the City of New York, which affirmed a decision of the Department of Buildings of the City of New York to disapprove a modification of the plans for a building already approved and under construction. Petitioner further seeks an order directing the Commissioner of the Department of Buildings to proceed with examination of the plans and to restore the construction permits previously granted for the modification of foundations. For the reasons which follow, the petition is granted.
*471 THE FACTS
On March 2, 1982, petitioner filed a new building proposal with the Department of Buildings. The plans called for a 45-story office building. On May 2,1982, the proposal was approved. On May 13, 1982, the Board of Estimate adopted a change in the zoning regulations affecting the district in which the 45-story building project was located. This change was the institution of the Special Midtown District, a major component of the Midtown Development Project.
Petitioner’s construction project is in an area of the east side where it is the policy of the new Special Midtown District to discourage overdevelopment, in order to encourage further development to the west and south. To accomplish this, the east side is now zoned for smaller buildings than had previously been allowed. Sections 81-20 through 81-28 of the new zoning regulations provide new, stricter limitations on such dimensions as height, bulk, setback and floor space.
Since the foundations for petitioner’s building were not completed as of the effective date of the new zoning regulations, the May 12 approval lapsed under section 11-331 of the preexisting rules of the New York City Zoning Resolution because the proposed 45-story building exceeded the limitations set by the new zoning regulations. Pursuant to section 11-331, however, petitioner applied for a reinstatement of the permit on June 11, 1982.
Where the foundations have been commenced but not completed, 11-331 provides that upon application, the Board of Standards and Appeals “may renew the building permit and authorize an extension of time limited to one term of not more than six months to permit the completion of the required foundations, provided that the Board finds that, on the date the building permit lapsed, excavation had been completed, and substantial progress made on foundations.”
The Board, on September 14, 1982, granted the application to restore the permit. Petitioner then had a vested right to complete the 45-story building, provided that foundations were completed within six months. Although there was later some issue as to the timely completion of *472 the foundations at the Board’s hearing on petitioner’s appeal of the Department of Buildings decision to disapprove petitioner’s later plan to modify the building, failure to timely complete foundations had not been cited as a basis for disapproving the modifications or for denying the appeal. Thus, no finding of fact by the Department or the Board as to timely completion can be at issue here.
On October 26, 1982, petitioner submitted to the Board new plans to modify the 45-story structure plan to a 38-story structure plan. The newer plan would reduce the height of the building so as to comply with the height requirements of the new midtown zoning regulations, but would continue to fail to conform with the new regulations for floor space. The plan for the new structure would only continue the same degree of floor space noncompliance, however, without adding further floor space in addition to that already existing in the 45-story plan.
The Department of Buildings approved the petitioner’s plans to modify its foundations to fit the new 38-story plan on January 11, 1983. On February 22, 1983, the Department disapproved the over-all plan for the 38 on the following grounds: “In accordance with Section 11-22 of the Zoning Resolution (Application of Overlapping Regulations) the provisions of 81-023 of the Zoning Resolution (Integration Clauses) takes precedent over Section 11-31 of the Zoning Resolution and therefore bulk regulations of Section 81-20 through 81-28 of the Zoning Resolution shall be deemed to be an integral unit and proposed development must meet all the requirements of the Special Midtown District.” On March 15, 1983, the Department revoked its approval of the modified foundation plan as having been “erroneously approved because these foundation plans were for a building which does not comply with the Special Midtown District, Sections 81-20 through 81-28 of the Zoning Resolution”.
Petitioner filed an appeal on March 21, 1983, and on June 16, the Board of Standards and Appeals held a public hearing. On August 18, 1983 the Board denied the appeal on the following grounds:
“whereas, under Section 11-31(b) of the Zoning Resolution, rights to proceed with construction after the effective *473 date of an amendment are retained when a modification in plans does not increase the degree of non-compliance with the provisions of this resolution; and
“whereas, Section 81-023 of the Midtown Special District amendment provides that in the Midtown Special District all bulk regulations shall be deemed to be an integral unit and shall not be modified except in accordance with Section 200 of the Charter; and
“whereas, the modified plans continue to provide for an excess in floor area, and, therefore, are not in compliance with the new Section 81-023; and
“whereas, the provisions of Section 81-023 are more strict than the provisions of Section 11-31(b) and must be applied in accordance with Section 11-22 of the Zoning Resolution;
“Resolved, that the decision of the Borough Superintendent, dated February 22, 1983, acting on N.B. Applic. No. 11/82, Objection No. Z3, be and it hereby is affirmed, and that the appeal be and it hereby is denied.”
On September 13, 1983, Fraydun Enterprises filed this petition.
On October 15,1983, petitioner filed a new modification plan with the Department, this time for a 29-story building. It would be similar to the 38, but with 9 floors removed. On November 2,1983, the Department approved the plan for the 29.
discussion
The instant proceeding involves a petitioner caught up in a transition between old and new regulations. The transactions and/or occurrences involved began at a time when the old rules were in effect and continue into the era of the new rules. The litigants disagree as to how the rights and/or powers they had under the old rules were altered at the point in time and in the development of the project, when the new rules took effect. The administrative agencies involved have been called upon to interpret the interrelationship of the old and the new rules during that limited window of time.
The main bone of contention between the parties is the interpretation of article I of the New York City Zoning *474 Resolution, section 11-31, and article VIII, chapter 1 of the New York City Zoning Resolution (which establish the new Special Midtown District), section 81-023. These two regulations provide in part as follows:
Section 11-31: “(b) The rights set forth in these Sections shall be retained only if all modifications relating to zoning made in such plans after the effective date of this resolution or any applicable amendment thereto, result in compliance or do not increase the degree of non-compliance with the provisions of this resolution.”
Section 81-023:
“Integration Clauses * * *
“(b) The bulk regulations contained in Section 81-20 through 81-28 shall be deemed to be an integral unit and no modification thereof shall be permitted, except in accordance with the provisions of Section 200 of the New York City Charter. If any sentence, clause, paragraph or part of Sections 81-20 through 81-28 shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not be confined in its operation to the sentence, clause, paragraph or part thereof directly involved in the controversy in which such judgment shall have been rendered, but shall also be construed to invalidate and prohibit the application of the remainder of Sections 81-20 through 81-28. However, any such judgment shall not act to invalidate any other sentence, paragraph, clause, section or chapter of the Zoning Resolution.”
ARGUMENTS AND HOLDINGS
Both parties agree that if 11-31 governs, then once the Board of Standards and Appeals renewed petitioner’s permit to build the original building, petitioner had the right to modify the 45 floors to the 38, so long as it did not include any additional zoning nonconformances and did not fail to meet other structural standards.
This court holds that 11-31 does govern here. Therefore, although it was within the Board’s discretion to grant or deny the renewal of the permit for the original 45-story building, once it did so, the Department of Buildings did not have the power to disapprove the plans submitted for the lower building on the basis of zoning alone. In so *475 disapproving the newer plan solely on the basis of zoning, the Department both exceeded its authority and acted arbitrarily and capriciously within the meaning of CPLR 7803 (subd 3).
An examination of the record discloses two arguments made by respondents in support of their position:
In the first, respondents argue that even though the first plan did not conform to “Midtown”, section 11-331 granted the Board the discretion to renew the building permit after the institution of “Midtown”. To that extent, this court agrees.
The respondents further argue, however, that once petitioner attempted to exercise the rights which stem from such approval (i.e., the right to submit modification plans to be evaluated by the Department of Buildings under criteria other than the zoning regulations, as long as the plans do not increase the degree of nonconformity), respondent came up against 81-023, which requires that all “Midtown” restrictions be met. Under 11-22, more restrictive zoning rules override contradictory overlapping ones. Respondent thus argues, “ Tt is evident that a provision which requires complete adherence to a series of integrated regulations is more restrictive than a provision which allows compliance with any one of the regulations — on a selective basis.’ ”
This reasoning suffers from the very infirmity which respondents ascribe to petitioner’s reasoning: It advocates “picking-and-choosing” what provisions to apply. It is acknowledged that 81-023 integrates the requirements of “Midtown”, but 81-023 is only a general requirement to be applied when “Midtown” is enforced as a whole. It must be remembered, however, that when “Midtown” was already in force, the Board granted petitioner the right to continue the 45-story project in derogation of “Midtown”.
The Board argues that although it granted the right to build a structure which was noncomplying to a significant degree, that right was granted under the “old” rules. The Board seeks to cast the modification plans as a “new” blueprint which must therefore be governed by “new” rules.
*476 This argument ignores a crucial point of law which respondent does not contest. That is, that the right to submit modification plans under 11-31 vests at the same time that the right to continue construction under 11-331 is granted. A change in zoning regulations occurring when foundations are under construction may be of any kind, but once the Board renews a building permit under 11-31, it suspends the new rules for purposes of the project. The Board should not then be heard to say that a modification of approved plans, which would not physically add further noncompliances, in fact, does add noncompliances.
Although petitioner’s stated purpose in proposing the smaller building is to voluntarily conform to the “Midtown” height requirements alone, petitioner is not, as respondents contend, actively violating 81-023 by selecting only some “Midtown” rules and thereby adding a new noncompliance. Rather, petitioner is exercising its right, under 11-31, to submit modification plans. Now that the Board has allowed a package of rights to vest, neither it nor the Department may “pick and choose” which aspects of these rights petitioner may apply.
In effect, the respondents have stated that a tangible increase in compliance with the new midtown regulations should be regarded as a technical increase in noncompliance. The reasoning is ptolemaic; the result is contradictory.
Respondents’ second argument to be gleaned from the record is that 11-31 cannot control the application of 81-023. Under 11-22, the principle that a more restrictive rule will supersede a broader rule is expressly made a rule of interpretation for the zoning regulations. Respondents apply 11-22 by juxtaposing 81-023 and 11-31. They conclude that 81-023 is the more restrictive, and therefore supersedes application of 11-31. This argument assumes an inherent conflict between the two rules, requiring the narrower of the two to supersede the other. As can be seen from the foregoing discussion, there is no inherent conflict between 81-023 and 11-31.
81-023 defines the requirements of the regulations, while 11-31 explains certain rights which may result from compliance or noncompliance with any zoning regulations. *477 The one type of rule need not preempt the other, even in light of 11-22. It is an apples and oranges comparison. In its interpretation, the Board seems to use the definition of the requirements of the regulations itself to preclude the consideration of rights which should stem therefrom.
Not only is respondents’ reasoning defective, but the result is absurd. Petitioners are faced with the paradox that they may build a structure far exceeding the prevailing zoning regulations, but they may not build a structure containing some compliances and some noncompliances.
The court is troubled by the fact that in disapproving the 38-story building while approving both the 45 and the 29, respondents have not addressed the most crucial underlying policy issue: How will the community benefit if the respondents approve a 45-story building on the east side which is clearly not in compliance with the “Midtown” rules, yet reject a 38-story building plan which comes closer to fitting “Midtown”? Clearly this question must be asked when interpreting the changes in the zoning regulations and determining how the zoning regulations should be applied. Respondents’ position that a proposed smaller building would offend the midtown zoning plan defies common sense and ignores the policies of the midtown plan in the name of enforcing it. Respondents have exceeded their authority, and their decision is arbitrary and capricious. (CPLR 7803.)
Accordingly, the August 16, 1983 resolution adopted by the Board of Standards and Appeals is hereby vacated. This application is remanded to the Board of Standards and Appeals of the City of New York for further consideration in accordance with the herein decision.